**In re Carlos DIAZ, Debtor.**

**No. 09–24550–BKC–RAM.**

United States Bankruptcy Court, S.D. Florida, Miami Division.

Oct. 15, 2009.

Aubrey G. Rudd, Foreclosure Defense Team, Miami, FL, for Debtor.

## ORDER DENYING MOTION FOR TURNOVER

ROBERT A. MARK, Bankruptcy Judge.

The Court of Appeals for the Eleventh Circuit ("11th Circuit") has held that ownership of a vehicle transfers to the secured creditor at the time of repossession. *In re Kalter*, 292 F.3d 1350 (11th Cir.2002). The issue before the Court is whether a 2001 amendment to Article 9 of the Florida Commercial Code renders *Kalter* inapplicable and entitles a debtor to regain possession of a vehicle repossessed prepetition. For the following reasons, the Court concludes that *Kalter* is still applicable notwithstanding the change to Fla.Stat. § 679.619(3). Thus, the debtor is not entitled to turnover.

### Factual and Procedural History

This issue is presented in Debtor's Motion to Redeem Repossessed Automobile through Chapter 13 Plan and Compel Turnover of Automobile ("Motion for Turnover") [CP# 15]. The respondent, Premier Partners, Inc., filed a Response to Debtor's Motion to Redeem Repossessed Automobile through Chapter 13 Plan and Compel Turnover of Automobile ("Response") [CP# 19] and Debtor filed a Supplemental Reply to the Response ("Reply") [CP# 26]. On September 17, 2009, the Court conducted a hearing on the Motion for Turnover.

The material facts are not in dispute. On July 15, 2008, Debtor purchased a 2007 Chrysler 300 Touring (the "Vehicle") from The Car Shack. The Car Shack retained a security interest in the Vehicle for the unpaid portion of the purchase price and assigned the security interest to Premier Partners, Inc. ("Creditor"). On July 1, 2009, Creditor repossessed the vehicle after Debtor defaulted on the auto loan. On July 16, 2009, after the Vehicle was repossessed, the Debtor filed his Chapter 13 petition. On July 31, 2009 Debtor filed the Motion for Turnover which seeks return of the Vehicle and states that the debt to Creditor will be paid under a Chapter 13 plan.

### Discussion

As noted at the outset, the 11th Circuit held in Kalter that under applicable Florida law, a vehicle that is repossessed prepetition is not property of the estate and is thus not subject to turnover pursuant to 11 U.S.C. 542(a). *In re Kalter*, 292 F.3d 1350 (11th Cir.2002); *see also In re Lewis*, 137 F.3d 1280, 1282 (11th Cir.1998) (concluding that Alabama law provides the same result). Citing *Kalter*, Creditor argues that turnover must be denied since the Vehicle is not property of the estate. The Debtor argues that *Kalter* and its progeny no longer apply because of a 2001 amendment to Fla. Stat. § 679.619(3). Debtor relies on two bankruptcy cases from courts outside the 11th Circuit, but interpreting Florida law, for this proposition. *See In re Nolan*, 2006 WL 3885137 (Bankr.E.D.Ky. 2006) (citing *In re Estis*, 311 B.R. 592 (Bankr.D.Kan.2004)). As discussed below, this Court disagrees with *Nolan* and *Estis* and holds that *Kalter* is still binding precedent in the 11th Circuit.

Whether or not a debtor's interest is "property of the estate", as the term is used in the Bankruptcy Code, is a question of federal law. *In re Kalter*, 292 F.3d at 1353 (quoting *In re Lewis*, 137 F.3d 1280, 1282 (11th Cir.1998)). However, property interests are defined by state law. *Id.; Butner v. United States*, 440

U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Thus, in *Kalter*, the 11th Circuit embarked on a lengthy analysis of both the Florida Uniform Commercial Code—Secured Transactions, Fla. Stat. §§ 679.101 *et seq.* ("Florida UCC") and the Florida Certificate of Title statute, Fla. Stat. §§ 319.001 *et seq.*, to determine when ownership of a repossessed motor vehicle transfers from a borrower to its secured creditor. After a rigorous exploration of the foregoing statutes, *Kalter* found that while the Florida UCC does not address the issue of ownership of repossessed collateral, the Florida Certificate of Title statute does. *In re Kalter*, 292 F.3d at 1353. Specifically, the court held that Fla. Stat. § 319.28(2)(b) expressly recognizes that ownership transfers to the secured creditor upon repossession since the statute states in relevant part:

> In case of repossession of a motor vehicle ... pursuant to the terms of a security agreement ..., an affidavit by the party to whom possession has passed stating that the vehicle ... was repossessed upon default in the terms of the security agreement ... shall be satisfactory proof of ownership.

*In re Kalter*, 292 F.3d at 1358 (quoting Fla.Stat. § 319.28(2)(b)). Furthermore, the 11th Circuit repeatedly rejected the argument that a debtor's right of redemption is sufficient to pull the property back into the estate. *Id.* at 1355.[1]

In this case, Debtor argues that a 2001 amendment to Article 9 of the Florida UCC, in particular Fla. Stat. § 679.619(3), renders *Kalter's* analysis inapplicable. Since the amendment took effect after the transactions at issue in *Kalter*, a review of the amended language is appropriate. As amended the subsection provides as follows: "A transfer of the record or legal title to collateral to a secured party under subsection (2) *or otherwise* is not of itself a disposition of collateral under this chapter and does not of itself relieve the secured party of its duties under this chapter." Fla.Stat. § 679.619(3) (2001) (emphasis added.) Debtor relies on *Nolan* to support his argument that the addition of the language "or otherwise" to this subsection of Article 9 governing transfers of title "likely overrides any effect title-clearing statutes would have on ownership after repossession by a secured creditor." *In re Nolan*, 2006 WL 3885137 (Bankr.E.D.Ky. 2006) (quoting *In re Estis*, 311 B.R. 592 (Bankr.D.Kan.2004)).

The *Nolan* court's interpretation is misguided and the statute's Official Comment debunks any such argument: "The mechanism provided by this section is *in addition to* any title-clearing provision under law other than this Article." Fla. Stat. § 679.619, cmt. n. 3 (emphasis added). The comment explicitly states the legislature's intent to supplement, not replace, existing non-UCC law, such as Florida's title-clearing statute. In addition, neither the statute, nor its official comment, addresses the issues of ownership discussed in *Kalter* and *Lewis*. Clearly, in enacting the change to § 679.619(3), the legislature did not intend to override the effect of Florida's Certificate of Title statute.

Finally, *Kalter* does not stand for the proposition, as suggested in *Nolan*, that Florida's title-clearing statute relieves a creditor of its duties under Article 9. Rather, as stated earlier, the court looked to Florida's Certificate of Title statute for its explicit recognition in § 319.28(2)(b) that ownership of collateral transfers to se-

---

1. While the 11th Circuit specifically said no to this argument, in *Nolan*, the chief case relied on by the Debtor here, the court concluded that the debtor's right of redemption is pre-

sumptive of Debtor's ownership after repossession. *In re Nolan*, 2006 WL 3885137, at *3 (Bankr.E.D.Ky.2006).

cured creditor upon repossession. *In re Kalter*, 292 F.3d at 1359.

In sum, to the extent *Nolan* found *Kalter* inapplicable based on the amendment to Fla. Stat. § 679.619(3), the Court rejects its conclusion. Moreover, if, as it appears, the *Nolan* court simply disagreed with *Kalter's* interpretation of Florida law, its disagreement is irrelevant to any court in the 11th Circuit since *Kalter* is binding precedent.

For the foregoing reasons, it is—

**ORDERED** that the Debtor's Motion for Turnover is **DENIED.**